*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. MILLER-BYRD, Minor.

UNPUBLISHED
March 23, 2023

No. 362339
Kent Circuit Court
Family Division
LC No. 20-051267-NA

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor child, JMB. On appeal, respondent argues that the trial court erred because the Department of Health and Human Services (the "Department") failed to make reasonable efforts at reunification, the trial court had no basis to take jurisdiction over JMB, and termination was not in JMB's best interest. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

JMB was born premature at 26 weeks and was a medically fragile child who, from birth, resided at the hospital's neonatal intensive care unit. He required extensive medical care, and the Department provided respondent at the hospital with medical training for the child's care and services for general parenting assistance. JMB was medically ready for discharge in June 2020, but remained at the hospital as a result of respondent's failure to learn the necessary medical skills to care for JMB.

The record shows that while JMB was at the hospital, respondent was never fully invested in his health and well-being. Her attendance at JMB's bedside and for medical training was sporadic and inconsistent, and her visits were never longer than a few hours. Instead of interacting and bonding with the child, respondent often got distracted, at times using her phone instead of bonding with JMB. Respondent eventually completed the medical training but failed to show a mastery over the child's care tasks.

JMB was discharged from the hospital in April 2021 and placed in a licensed foster care home. The Department continued to provide respondent with medical training and services, but she failed to fully take advantage of either. Respondent attended only 57% of parenting-time visits

and, when she did attend, was often distracted or unable to independently complete JMB's care tasks. Respondent also frequently missed JMB's medical appointments and therapy sessions, as well as her own counseling sessions and parenting classes.

In February 2022, the Department began proceedings to terminate respondent's parental rights. In July 2022, the trial court terminated respondent's parental rights to the child under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to the parent), concluding that, throughout this case, respondent never demonstrated the ability to properly care for the child. This appeal followed.

## II. REASONABLE EFFORTS AT REUNIFICATION

Respondent argues that the trial court clearly erred when it concluded that the Department made reasonable efforts at reunification. Specifically, respondent challenges the adequacy of the Department's efforts concerning ongoing medical training for JMB. We disagree.

## A. STANDARD OF REVIEW

We review the trial court's findings regarding reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). This Court also reviews the trial court's determination of statutory grounds for termination for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).[1]

## B. ANALYSIS

"Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. Whether

---

[1] In order to preserve the issue whether reasonable efforts for reunification were made, a respondent typically must raise the issue at the time the court adopts the services plan. See *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). The record demonstrates that respondent never objected to the reasonableness of the services provided by the Department. Therefore, this issue is not preserved for appeal. *Id.*

Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020); In re Terry, 240 Mich App 14, 20; 610 NW2d 563 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App at 135 (quotation marks and citations omitted).

reasonable services were offered relates to the sufficiency of the evidence for termination of parental rights. *In re Fried*, 266 Mich App at 541. Although the Department "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. To prevail on claim of lack of reasonable efforts, respondent must show that she would have fared better had the Department offered other services. *In re Fried*, 266 Mich App at 543.

First, respondent argues that the Department did not provide enough medical training in order for her to learn JMB's care tasks. With respect to the amount of medical training offered, the Department offered respondent ample opportunities for medical training to learn, practice, and master the child's care tasks for over two years. The Department provided medical training at the hospital after JMB's birth and continued to provide training after his discharge from the hospital. After over a year and a half, respondent completed the necessary medical training but failed to master JMB's care tasks. During parenting-time visits, a nurse was available so that respondent could continue to learn the care tasks. Yet despite almost two years of training, respondent often needed assistance, at times hand-to-hand assistance, from either the hospital staff or foster parents to complete JMB's care tasks. Accordingly, the record establishes that the Department's efforts to provide respondent with medical training were reasonable.

Next, respondent argues that the Department never provided her with a chance at another "room-in" after the first room-in was unsuccessful.[2] The record does not support this argument. To schedule the second room-in, respondent was required to call the hospital to schedule it, which she never did.

Lastly, respondent argues that the Department did not provide sufficient opportunities to practice JMB's care tasks once he was placed in foster care. Again, the record does not support this assertion. JMB's medical appointments were scheduled on days when respondent was able to attend or was otherwise required to be present. During parenting-time visits, respondent was provided with opportunities to interact with JMB, and practice and master the child's care tasks under the supervision of a nurse. However, respondent only attended 57% of these visits and, when asked to complete a care task, respondent never demonstrated an understanding or mastery. If respondent did make the appointment, her engagement fluctuated. Accordingly, the record establishes that the Department's efforts to provide respondent with opportunities to practice and master JMB's care tasks once he was placed in foster care were reasonable.

In sum, the reunification efforts made by the Department were reasonable. Respondent was provided a meaningful and adequate opportunity to participate in and benefit from ongoing medical training, but failed to do so. Given her failure to fully take advantage of the medical training offered throughout this case, she cannot show that she would have fared better had other services been provided.

---

[2] A room-in is a 12-hour shift during which respondent was expected to provide all of JMB's care under supervision of the hospital staff.

## III. STATUTORY GROUNDS

Respondent also contends that the trial court erred by finding that there existed a statutory ground for termination. We disagree.

## A. STANDARD OF REVIEW

"The trial court's decision that a ground for termination of parental rights has been proved by clear and convincing evidence is reviewed for clear error." *In re Pops*, 315 Mich App 590, 593; 890 NW2d 902 (2016). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## B. ANALYSIS

The termination of parental rights under MCL 712A.19b(3)(c)(*i*) is proper when "182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." See also *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009) (concluding the trial court did not clearly err when it terminated the respondent's rights under (c)(*i*) because "the totality of the evidence amply supports that she had not accomplished any meaningful change in the conditions existing by the time of the adjudication"). There is no dispute that when the trial court terminated respondent's parental rights, 182 or more days elapsed since the issuance of the initial dispositional order.

Respondent argues that the trial court clearly erred by finding that the lack of progress overcoming the barriers that existed at adjudication supported termination under MCL 712A.19b(3)(c)(*i*). Specifically, respondent claims that despite the inadequacy of the Department's efforts to provide ongoing medical training, respondent completed the necessary training to provide the medical care for JMB's return.

The condition that led to adjudication was respondent's inability to provide necessary care for JMB that stemmed from inconsistent attendance at care trainings and bonding times. In *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018), we held that the respondent-mother's inadequate effort to address her child's medical needs, as well as her inability to participate in the child's care, supported termination under MCL 712A.19b(3)(c)(*i*). Similarly here, the record shows that she made little progress toward demonstrating her ability to care for JMB's extensive medical needs. Respondent regularly skipped care trainings, bonding times, scheduled medical appointments, parenting-time visits, and therapy sessions. Each appointment was a missed opportunity to learn about JMB's extensive medical needs and demonstrate her ability to address

-4-

them. Moreover, respondent failed to show mastery of the skills needed to provide medical care for JMB: she could not show that she could singlehandedly, successfully provide the necessary medical care for the child in nonemergency, let alone emergency, situations. Thus, the trial court did not clearly err by finding that respondent failed to obtain the appropriate skills to properly care for the child and that there was no reasonable likelihood that respondent would improve her caretaking abilities within a reasonable time. Termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*).

## IV. BEST INTEREST

Next, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in JMB's best interest. We disagree.

## A. STANDARD OF REVIEW

The trial court's ruling regarding best interests are reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," with the reviewing court "defer[ring] to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

## B. ANALYSIS

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). All available evidence should be weighed to determine the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The best-interest determination focuses on the child rather than the parent. *In re Schadler*, 315 Mich App at 411. When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White*, 303 Mich App at 713. These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.* at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App at 142.

The trial court found that it was in JMB's best interest to terminate respondent's parental rights, primarily as a result of his extensive need for medical care. The child was diagnosed with anemia, multiple masses of neck, pulmonary hypertension, tracheobronchomalacia, tracheostomy dependence, cornea opacity, cyst of brain, retinopathy of prematurity, feeding difficulties, chronic lung disease of prematurity, chronic respiratory failure, and macrocephaly. As discussed, respondent was unable to demonstrate that she could safely care for the child in light of his extensive medical needs. While respondent completed the medical training, she failed to master the necessary medical skills to consistently and reliably care for the many needs of the child. The trial court ordered respondent to attend every parenting-time visit, every medical appointment, and to engage with the child's care tasks, but she failed to do so. Despite the plethora of opportunities

provided for at the hospital, parenting-time visits, and medical appointments, respondent failed to develop the ability to properly parent or care for the child. Respondent's lack of meaningful participation is "evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. For this reason alone, terminating respondent's parental rights was in the child's best interests when the Court considers the risk of harm to the child if left to remain in respondent's care and custody.

It is axiomatic that JMB also needed permanency, stability, and finality. See *In re White*, 303 Mich App at 713-714. At the time of termination, he had been in either the hospital or foster care for his entire life. Although respondent demonstrated that she had a bond with the child, her caseworker testified that the bond was not as strong as that with the foster parents or nurse. JMB's foster home provided for his needs, and the foster parents had the requisite skills to ensure his safety and provide him exceptional medical care. A case worker testified that the child's foster parents provided a stable and secure environment and had the ability to continue to do so.

One crucial aspect of providing for JMB's needs was transportation. Contrary to respondent's argument on appeal, the trial court did not clearly err when it considered respondent's inability to drive because reliable attendance at medical appointments and therapy sessions were necessary for the child's needs and development. Additionally, testimony showed that JMB thrived in foster care and that since his discharge, the child adjusted well, and his health and development had only improved.

Given JMB's extensive medical needs and the reasonable likelihood that respondent will be unwilling or unable to meet them, there was a risk of harm to JMB if returned to respondent's care and custody. In light of this, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

## IV. JURISDICTION

Lastly, respondent argues that the trial court clearly erred when it exercised jurisdiction over JMB because the court never clarified with respondent which allegations in the petition she admitted and which she denied. Thus, respondent contends the plea was not knowingly and voluntarily made. We disagree.

## A. STANDARD OF REVIEW

This Court "review[s] the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App at 295. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

## B. ANALYSIS

After authorizing a petition to take jurisdiction over a minor child, the trial court "can exercise jurisdiction over the child . . . if a respondent-parent enters a plea of admission or no contest to [the] allegations in the petition . . . ." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019); see also MCR 3.971. However, before the court may do so, it must find that a statutory

basis exists for exercising jurisdiction over a minor in a child protective proceeding. *In re PAP*, 247 Mich App 148, 152-153; 640 NW2d 880 (2001). "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). Jurisdiction must be established by a preponderance of the evidence. *In re Mota*, 334 Mich App 300, 312-313; 964 NW2d 881 (2020).

In circumstances when a respondent enters a plea of admission to all or some of the allegations in the petition, the trial court may not accept that plea "without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true . . . ." MCR 3.971(D)(2). If the trial court does not establish support for a finding that one or more of the statutory grounds alleged in the petition is true, then the respondent's plea of admission is invalid because it is not an accurate plea. MCR 3.971(D)(2).

The trial court in this case exercised jurisdiction over the child under MCL 712A.2(b)(1) and (2), which provide, in relevant part:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, *when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals*, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.
>
> * * *
>
> (2) Whose *home or environment*, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, *is an unfit place for the juvenile to live in*. [Emphasis added.]

The trial court stated in its written order of adjudication that it was exercising jurisdiction over the child because there was a "failure to provide, when able to do so, support, education, medical, surgical, or other necessary care for the health or morals" of the child and there existed "an unfit home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent."

At the adjudication hearing, respondent's attorney stated that respondent desired to enter a plea of admission to the allegations contained in the petition. After the court advised her of the rights she was giving up by entering a plea and the consequences of entering a plea, respondent and the trial court had the following exchange:

> *The Court*: Okay. Very good. Paragraph D states that [o]n 6-24-2020, Children's Protective Services (CPS) received a complaint alleging that [the child] had been in the neo-natal intensive care unit (NICU) since his birth on 9-25-2019, due to being born premature at 26 weeks gestation. [The child] was placed on a

tracheostomy and ventilator to assist with breathing. The complaint alleged that [respondent] needed to be trained in tracheostomy and ventilators to learn [the child's] care for safe discharge, however [respondent] had not attended more than 50% of trainings. [The child] was allegedly medically ready for discharge but remained in the NICU due to [respondent] being unprepared to care for him at home. The complaint also alleged concerns for conditions of [respondent's] home, due to rodents, bed bugs, and secondhand smoke from the upstairs neighbor's apartment.

Now this is one where if you do admit it because it's someone else talking, not—not something you would know necessarily in person, that you could admit upon information and belief. So do you admit upon information and belief, deny, or no contest?

[*Respondent*]: On information and belief only because some of its partially true.

*The Court*: Sure. And some of it—you're not disputing that someone else might have said that or made a record of that, right? Right. I think that's a fair admission here.

Respondent is correct that the trial court did not clarify which aspects of the allegation she admitted and which aspects of the allegation she implicitly denied. However, the trial court then reviewed the rest of the allegations contained in the petition, and respondent admitted that JMB had multiple complex medical diagnoses and that her attendance at his bedside for bonding or medical training was sporadic. She also admitted that she undertook an effort to clean her home, which had rodents, a stove covered in mice feces, and marijuana on the kitchen table.

Although the trial court never determined what facts respondent admitted to in ¶ D, in light of the rest of respondent's testimony, the trial court could find that respondent neglected to provide the proper medical care necessary for the child's health and that respondent's home was unfit for the child. Respondent's own testimony was sufficient to establish support for a finding that jurisdiction was proper under MCL 712A.2(b)(1) and (2).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford